**MIAMI LINCOLN–MERCURY, INC.,**
Appellant,

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellee.**

No. 13753.

Court of Civil Appeals of Texas.

San Antonio.

June 21, 1961.

Franklin S. Spears, San Antonio, for appellant.

House, Mercer, House & Brock, San Antonio, for appellee.

POPE, Justice.

Who owned a motor vehicle at the time it was destroyed is the question presented. Whittier G. Davis and wife had an insurance policy with United Services Automobile Association, which contained a replacement provision.[1] The claim is that

1. "Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; * * *."

the Davises owned a 1956 Mercury which was covered by the policy at the time it was totally destroyed. Defendant, U.S. A.A., claims that the car was owned not by the Davises, but by Miami Lincoln-Mercury, Inc., a dealer, who had not yet completed a sale of the vehicle to the Davises. Miami Lincoln-Mercury, Inc., obtained an assignment from the Davises and sued to assert its rights under the assignment. The evidence supports the trial court's findings of fact and judgment for the defendant insurer, that the Davises at the time of the accident were not yet the owners of the new car.

The facts which plaintiff, Miami Lincoln-Mercury, relies upon to prove that the Davises were owners of the new car are, that they came to plaintiff's place of business on November 26, 1955, and selected the specific vehicle; they asked plaintiff to install certain accessories; they paid plaintiff $100 in cash to apply on the purchase price; they signed an application for the transfer of title as well as powers of attorney authorizing plaintiff to obtain a certificate of title and license plates in their name, and on November 28, 1955, the State of Florida issued a certificate of title showing that the Davises were the registered owners of the new car. While the accessories were being installed, the Davises returned to their home 150 miles away, and on November 29, 1955, the salesman who had dealt with the Davises phoned them. They asked him to deliver the car to them. That night, while the salesman was driving the car in Miami, he had an accident which destroyed it.

■ U.S.A.A., the insurer, relies upon other facts which support the trial court's judgment that the sale was not completed and that the new car was not yet owned by the Davises at the time of the wreck. The record shows that the Davises on November 26, 1955, when they were in plaintiff's place of business in Miami, expressed their own intent and understanding of the trade by a memorandum in writing.

They executed a "Buyer's Order", which embodies their understanding of the transaction. This document shows that the Davises selected the car and ordered the installation of certain stated accessories. The order reflected that the total purchase price was $4,121.55. Of this purchase price, Davises paid $100. They were allowed the sum of $1,189.05 for their 1949 Mercury, which they were to transfer to Miami Lincoln-Mercury, Inc. The balance of $2,832.50 was to be paid "Cash on Delivery." The memo contained some printed conditions. One condition was that the amount allowed on the 1949 Mercury was dependent upon a re-appraisal at the time the new car was delivered to the buyer. By that condition, the amount of the trade-in allowance was still subject to determination. By another condition, delivery of the new car was conditioned upon the payment of the cash consideration or the making of other financial arrangements. The Davises at all times prior to the accident had possession of their old 1949 Mercury, had the certificate of title to it, and had not transferred it to Miami Mercury-Lincoln, Inc. They did not have possession of the new 1956 Mercury, and delivery to them was conditioned upon unfulfilled events. From these facts, we conclude, as did the trial court, that the Davises had coverage on the 1949 Mercury, which they were still driving, and that a replacement under the policy had not occurred at the time of the wreck on November 29, 1955. Ownership of the new Mercury would have been transferred to the Davises upon delivery, and delivery would have occurred upon payment and delivery of the 1949 Mercury. Those controlling events were unfulfilled.

■ The fact that the State of Florida had issued a certificate of title to the Davises created a presumption of their ownership. Pritchett v. Highway Insurance Underwriters, 158 Tex. 116, 309 S.W.2d 46; Pioneer Mutual Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202. The other evidence, however, met and overcame that presumption. Willingham v.

Fidelity & Casualty Co. of New York, Tex.Civ.App., 288 S.W.2d 884; Insurance Company of Texas v. Stratton, Tex.Civ. App., 287 S.W.2d 320.

The judgment is affirmed.